UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| JOHN ROBERT GANOE, | No. 2:16-cv-0019 CKD P |
|---|---|
| Plaintiff, | |
| v. | ORDER AND |
| T. ABREU, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. The claims which remain arise under the Eighth Amendment against defendants Abrue, Johnson, Gonzalez and Kirby who are all employees of the California Department of Corrections and Rehabilitation (CDCR) at the Deuel Vocational Institution (DVI). Defendants have filed a motion for summary judgment in which they argue that plaintiff failed to exhaust available administrative remedies prior to filing suit. For the following reasons, the court recommends that defendants' motion for summary judgment be granted.

I. Plaintiff's Allegations

Plaintiff alleges he arrived at DVI on April 21, 2014 and was housed in E-wing of the Special Processing Unit. At some point, plaintiff heard other inmates who were housed in the

/////

/////

San Joaquin County Jail with plaintiff spread around the unit the details of plaintiff's convictions.[1]

On May 14, plaintiff was assigned Jesus Vega as a cell mate. At some point, Vega demanded to see plaintiff's "paperwork" and became more angry and aggressive toward plaintiff. On June 10, plaintiff requested in writing to be placed in protective custody, but received no response.

On June 24, after eating, plaintiff refused to enter his cell, and asked to speak to a sergeant about concerns he had for his safety with respect to his cellmate. Plaintiff was forced into his cell by a correctional officer. After plaintiff entered his cell, Vega became furious and said, "no they're moving you today." Vega demanded that plaintiff call "man down" or Vega would beat him.

As plaintiff attempted to get the attention of a correctional officer by pounding on his cell door and yelling "man down," Vega stripped to his shorts, removed his shirt and began wrapping his fists with cloth. At that point, defendant Abrue opened the door. Plaintiff told Abrue that Vega wanted to fight and that he was afraid. Vega indicated "he has to go!" Abrue said "nobody's going anywhere," slammed the cell door shut and left. After Abrue left, plaintiff was beaten unconscious by Vega. After the attack, Abrue returned and removed Vega from the cell and plaintiff was taken to see Officer Sandoval. At the time, he was covered in blood and inmates plaintiff identifies as gang members yelled threats. Sandoval told them to "shut up." After receiving medical attention, plaintiff was moved to administrative segregation.

Plaintiff remained in administrative segregation until a classification hearing was held on August 21. At the hearing, defendants Gonzalez, Johnson and Kirby informed plaintiff he would be removed from administrative segregation and sent back to the Special Processing Unit. Plaintiff "vehemently disagreed" and reminded the panel of the threats to his safety.

/////

---

[1] Plaintiff stands convicted of the following violations of California law: three counts of lewd and lascivious acts upon a child under the age of 14; one count of forcible sodomy; and three counts of forcible rape. People v. Ganoe, No. C076278, 2016 WL 5940925, at *1 (Cal. Ct. App. 3d Oct. 13, 2016).

2

While plaintiff was being transferred back to E-wing, he was identified by a gang leader and plaintiff was threatened by him and other gang members including inmates Davis and Chapman. Plaintiff informed defendant Abrue of the threats. Plaintiff requested that Abrue send plaintiff back to administrative segregation or some other form of protective custody, but Abrue refused and ordered that plaintiff go to his new cell.

About a half hour later, plaintiff met Abrue and another correctional officer. Plaintiff detailed threats made against him and requested protective custody. Abrue told plaintiff he needed to learn how to fight, and the other officer told plaintiff his crimes were "despicable." Plaintiff's request for protective custody was denied.

On August 31, while returning to his cell after eating, plaintiff was "jumped" and beaten by inmates Davis and Chapman. After this incident, plaintiff requested protective custody, but was again denied.

On September 4, plaintiff requested in writing to speak with defendant Johnson explaining the details of his being "jumped" and asking to be placed back in administrative segregation. Plaintiff did not receive a reply to his request.

On October 1, while plaintiff was on the exercise yard, he was punched in the face by an inmate and knocked unconscious. Plaintiff was taken to UC Davis Medical Center and was diagnosed with an orbital fracture of his left eye socket, a global rupture of his left eyeball and a detached retina. Plaintiff was returned to DVI after the surgery, but continued to experience pain. On October 30, 2014, plaintiff was again taken to UC Davis Medical Center and underwent a second surgery on his left eye. After the surgery, plaintiff was returned to DVI where he was housed in the infirmary for three months while he recuperated. Plaintiff alleges that as a result of the attack he has lost the vision in his left eye.

II. Standards Regarding Exhaustion

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). Administrative procedures generally are exhausted with respect to the California prisoner grievance process once

the third level of review is complete. The third level of review constitutes the decision of the Secretary of CDCR. Cal. Code Regs. tit. 15, § 3084.7.

The exhaustion requirement demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to "properly exhaust" administrative remedies the prisoner must generally comply with the prison's critical procedural rules, including deadlines, throughout the administrative process. Id. at 91-92.

If undisputed evidence viewed in the light most favorable to the prisoner / plaintiff shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). If there is at least a genuine issue of material fact as to whether there was exhaustion, the motion for summary judgment must be denied. See Fed R. Civ P. 56(a).

III. Analysis

Cal. Code. Regs tit. 15 § 3084.6(c)(4) sets forth a 30 day time limit for filing of grievances. Plaintiff acknowledges that the first grievance he submitted regarding the attack and the events that preceded it was on April 2, 2015. (ECF Nos. 19 at 3-2, 22 at 5.) It is undisputed that his submission of the grievance occurred six months after the October 1, 2014 battery, and five months after the mandated time limit.

In grievance No. 952, dated April 2, 2015, plaintiff asserted as follows:

> While an RC inmate at D.V.I in Tracy, S.P.U., I sustained serious bodily injury on June 24, 2014 because of Officer T. Abrue's deliberate indifference to my safety concerns. At an initial ICC meeting with the Warden, Captain Johnson and Counselor T. Kirby, I made them aware of serious threats made to me by gang members. ICC recommended that I stay in A.S.U for 60 days pending an investigation. On 8/21/14 at I.C.C. review a Dep. Warden and Captain Johnson said I should return to S.P.U. I disagreed citing safety concerns. I inquired of the investigation and was told that it was never done. I requested to remain in A.S.U. or be given single cell status. My request was denied and I was ordered back to S.P.U. On 8/31/14, I was battered by 2 gang members. While at medical my request for A.S.U. housing was again denied despite my safety concerns. I was sent back to S.P.U. On 10/1/14 I was battered yet again, this time, rushed to U.C. Davis Medical Center with serious injuries. I sustained an orbital fracture of my eye socket, global rupture of my eyeball and a detached retina of my left eye. I've endured multiple surgeries with another scheduled for the near future. I am now legally blind in my left eye. . . To my

4

> utter astonishment, after pleading with staff to be housed in A.S.U., citing safety concerns yet again, I was made to return to S.P.U. on 10/2/14 following surgery.

ECF No. 19-4 at 7 & 9.

On April 7, 2015, the grievance was cancelled at the first level pursuant to Cal. Code. Regs tit. 15 § 3084.6(c)(1) for not being "within the jurisdiction of the department." Id. at 11.

Plaintiff then grieved the cancellation of grievance No. 952 in grievance No. 1149 which plaintiff submitted April 22, 2015. Id. at 13. At the second level, the reviewer agreed with plaintiff that cancellation of his previous grievance for lack of jurisdiction was improper. Id. at 17. However, the reviewer indicated the grievance should have been cancelled pursuant to Cal. Code. Regs tit. 15 § 3084.6(c)(4) for exceeding the 30 day time limit for filing of grievances. Therefore, grievance No. 952 was not reinstated. Id. at 18.

Plaintiff then appealed that decision to the final level or review, or "Director's Level." ECF No. 19-6 at 8. The decision was affirmed. Id. at 8-9.

In his opposition, plaintiff suggests that his delay in filing his grievance is attributable to the fact that he did not know there was a grievance procedure. However, this allegation is belied by plaintiff's admission that he requested a grievance form, or "602," from defendant Abreu on or around July 4, 2014. ECF No. 23 at 5-6.

Plaintiff also asserts that he was too depressed to file a lawsuit, and that he was unaware of the inmate appeals process. Id. Even assuming, arguendo, the truth of plaintiff's claims of ignorance, plaintiff failed to raise these claims to the third level of review when the prior denials alerted him to the deficiencies of his grievances. See, e.g. ECF No. 19-6 at 8. The fact that the plaintiff continued to protest regarding the admittedly erroneous citation underlying the cancellation of the first grievance does not cure the untimeliness of the filing of the grievance itself. As the defendants note, "[plaintiff] alone thwarted his opportunity to present his circumstances surrounding the untimely filing of his appeal." ECF No. 26 at 4.

Thus it is clear the grievance filed by plaintiff on April 2, 2015 is untimely on its face. In light of these facts, the court cannot find that the cancellation of plaintiff's grievance was in error, that plaintiff "properly exhausted" administrative remedies, or that the grievance process was

rendered unavailable to plaintiff by the improper actions of prison officials or for some other reason.

IV. Conclusion

For all of the foregoing reasons, there is not a genuine issue of material fact as to whether plaintiff properly exhausted available administrative remedies with respect to the claims which remain in this action before plaintiff brought this action. Therefore, defendants are entitled to summary judgment for failure to exhaust administrative remedies and this case should be closed.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court assign a district court judge to this case; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 19) be granted; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 30, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

[1] gano0019.exh

6